**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joyce W. Jones, Derivative on behalf of CSK AUTO CORPORATION,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Maynard L. Jenkins, Jr; Martin G. Fraser; Don W. Watson; Morton Godlas; James G. Bazlen; Charles K. Marquis; Terilyn A. Henderson; Charles J. Philippin; William A. Shutzer; James O. Egan; Simon Moore; Christopher J. Stadler,<br><br>　　　　Defendants.<br><br>-and-<br><br>CSK AUTO CORPORATION, a Delaware corporation,<br><br>　　　　Nominal Defendant. | No. 06-01881-PHX-DGC<br><br>**ORDER** |

Nominal Defendant CSK Auto, Inc. has filed a motion to dismiss the Second Amended Complaint for failure to plead demand futility. Dkt. #62. The Court has reviewed the memoranda submitted by the parties. Dkt. ##62, 69, 72. For the reasons set forth below, the Court will grant Defendant's motion.[1]

---

[1] Defendant's request for oral argument is denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

## I. Background.

This case shares a common factual background with the securities class action against CSK, a retailer of automotive parts and accessories. *See Communications Workers of America Plan for Employees' Pensions and Death Benefits*, No. CV-06-1503-PHX-DGC, 2007 WL 951968 (D. Ariz. March 28, 2007). Beginning on March 27, 2006, CSK made a series of public announcements that it would restate prior years' financial statements due to accounting errors uncovered by its Audit Committee. *Id.* at *1. On September 28, 2006, CSK confirmed that accounting errors and irregularities had impacted its financial statements during fiscal years 2001 to 2003, each quarter in 2004, and the first three quarters of 2005. The overstatements included $70 million in inventory, $12 million in vendor allowances, and $3-$7 million in store surplus fixtures and supplies. *Id*. The company also announced that President/Chief Operating Officer ("COO") Martin Fraser and Chief Administrative Officer/Chief Financial Officer ("CFO") Don Watson would no longer be employed by the company. *Id*. Chairman and Chief Executive Officer ("CEO") Maynard Jenkins also announced his retirement. *Id*.

On June 11, 2007, Plaintiff Joyce W. Jones filed the Second Amended Complaint ("Complaint") derivatively on behalf of CSK. Dkt. #57. The Complaint alleges that Defendants, including all members of CSK's Board of Directors, "breached their fiduciary duties owed to CSK Auto by issuing improper statements and causing or allowing the Company to operate in an environment devoid of adequate internal controls over financial reporting." *Id*. ¶ 3. These actions and improprieties allegedly took place between February 2001 and the present (the "Relevant Period"). *Id*. ¶ 1.

The Complaint contains counts against Defendants Jenkins, Watson, and James Riley for disgorgement under the Sarbanes Oxley Act of 2002 ("SOA"), certain "Insider Selling Defendants" for breach of fiduciary duty through insider selling and misappropriation of information, and all Defendants for breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. *Id*. ¶¶ 192-223.

**II.     Discussion.**[2]

A shareholder seeking to represent the interests of a corporation through a derivative suit must either demand that the corporation's directors take action or plead with particularity the futility of making such a demand. Fed. R. Civ. P. 23.1; *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999). The purpose of the demand requirement in Rule 23.1 is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991). Because Rule 23.1 does not establish guidelines for determining when demand would be futile, a court must look to the substantive law of the state of incorporation. *Id.* at 99; *In re Silicon Graphics*, 183 F.3d at 990.

   **A.     Delaware Law.**

Defendant is a Delaware corporation. The parties agree that Delaware substantive law applies and that the determination of whether demand is futile is controlled by *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).[3] Under *Rales*, the Court must ask "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations." *Id.* at 934. The Court must determine "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a

---

[2]Defendant argues that Plaintiff has not properly pled standing. Dkt. #62 at 15. Rule 23.1 requires that a derivative plaintiff be a current shareholder and "that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains[.]" Plaintiff has pled that she is currently a CSK shareholder and that she owned shares during at least some of Defendants' allegedly wrongful conduct. This allegation is sufficient to grant standing with respect to at least some of the issues in this case. Given the Court's ruling in this order, the Court need not address the full extent of Plaintiff's standing.

[3]*Rales* controls because Plaintiff does not challenge a specific decision of the board. If she had, the alternative demand futility test of *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), would apply.

- 3 -

1  demand." *Id.* The Court must confine itself to the well-pled allegations of the complaint and
2  draw all reasonable inferences from non-conclusory factual allegations in the plaintiff's
3  favor. *See Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003).

4  "Directorial interest exists whenever divided loyalties are present, or where the
5  director stands to receive a personal financial benefit from the transaction not equally shared
6  by the shareholders." *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992) (citing
7  *Aronson*, 473 A.2d at 812). A "key inquiry in the *Rales* analysis is whether the plaintiffs
8  have pled facts that show that [the directors] face a sufficiently substantial threat of personal
9  liability to compromise their ability to act impartially on a demand." *Guttman*, 823 A.2d at
10 503. A director lacks independence if he is beholden to an interested director or "so under
11 [another's] influence that [his] discretion would be sterilized." *Rales*, 634 A.2d at 936. The
12 Court will examine Plaintiff's allegations to determine whether the Directors were interested
13 or lacked independence.

14 **B.   Directors as a Group.**

15 There were seven members of CSK's Board of Directors (collectively "Directors")
16 at the time Plaintiff filed the Complaint. Dkt. #57 ¶¶ 18-27; 169. One member, Chairman
17 of the Board Maynard L. Jenkins, also served as the Chief Executive Officer of CSK. *Id.*
18 ¶ 20. The other six members – Defendants Godlas, Marquis, Bazlen, Henderson, Philippin,
19 and Shutzer – were outside Directors. *Id* ¶¶ 22-27. The Court must determine whether a
20 majority (four) of the Directors were either interested or lacked independence. If so, their
21 interest would eliminate the requirement of a demand. *In re TASER Int'l Shareholder*
22 *Derivative Litig.*, No. CV-05-123-PHX-SRB, 2006 WL 687033, at *1, 10 (D. Ariz. March
23 17, 2006).

24 Plaintiff's allegations involving the Directors collectively are scant and vague.
25 Although Plaintiff describes each Director separately, she makes the same boilerplate
26 allegations for each:

27 Because of [Director's] position, he knew the adverse, non-public information
   about the business of CSK Auto, as well as its finances, markets and present
28 and future business prospects, via access to internal corporate documents,

- 4 -

>conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.

Dkt. #57 ¶¶ 20, 22-27; 176.  The Complaint also alleges that each Director "participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings."  *Id*.; *see also* Dkt. #57 ¶ 185 (each Director "authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts").

Plaintiff alleges the Directors were neither disinterested nor independent because they "failed to prevent and correct the improper financials and failed to ensure a proper control environment."  *Id*. ¶ 177.  Plaintiff concludes that demand is excused because the Directors would have to sue themselves to bring suit.  *Id*. ¶ 183.

These conclusory allegations regarding the Directors as a group are insufficient to demonstrate demand futility.  Courts applying Delaware law have held that allegations that directors merely participated in wrongful conduct are insufficient.  *See, e.g.*, *In re Silicon Graphics*, 183 F.3d at 990.  Similarly, allegations that directors "must have known" about and "failed to prevent and correct the improper financials" are insufficient.  *See Rattner v. Bidzos*, No. Civ.A 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003); *see also Ferre v. McGrath*, 2007 WL 1180650, at *6 (S.D.N.Y. 2007) (holding that "[a]llegations of knowledge explained solely by the directors' service as directors, without more, are insufficient as a matter of law – even where, as here, the plaintiff alleges that the matters in suit relate to the corporation's 'core' business") (citing *Rattner*, 2003 WL 22284323, at *13).  Similarly, "[a] plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors participated in the challenged transaction or that they would be reluctant to sue themselves.'"  *In re Sagent Tech.*, 278 F.Supp.2d 1079, 1089 (N.D.Cal. 2003) (citing *Blasband v. Rales*, 971 F.2d 1034, 1049 (3d Cir. 1992) (citing Delaware law)).

The Complaint must include particularized allegations "detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the

- 5 -

accounting irregularities." *Guttman*, 823 A.2d at 503. The Complaint is devoid of such particularized factual allegations or other facts showing that the Directors as a group were not disinterested. As a result, the Court must examine the allegations regarding individual Directors to determine if a majority are either interested or lack independence.

### C. The Audit Committee.

Plaintiff alleges that three of the Defendant directors – Godlas, Philippin, and Henderson – are not disinterested because they face personal liability as members of the Board's Audit Committee. Dkt. #57 ¶ 170. The Complaint lists six duties of the Audit Committee and concludes that the Committee "was responsible for overseeing and directly participating in CSK Auto's financial reporting process as well as ensuring an appropriate 'tone at the top.'" *Id.* ¶ 171.[4]

Membership on an Audit Committee does not alone render directors personally liable and therefore too interested to consider a shareholder's demand. *See Guttman*, 823 A.2d at 507. Plaintiff alleges that the Audit Committee members were not disinterested because they participated in CSK's wrongdoing, or, alternatively, because their failure of oversight indirectly led to the accounting irregularities. The Court will address each category of allegations separately.

#### 1. Allegations that the Audit Committee Knew of CSK's Accounting Irregularities.

Plaintiff alleges that "the Audit Committee participated in the preparation of improper financial statements and earnings press releases that contained false and/or misleading

---

[4]The six duties are: "(i) reviewing and discussing CSK Auto's annual and quarterly financial statements; (ii) discussing with management the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts; (iii) overseeing the integrity of the Company's financial statements, internal audit function, and compliance with legal and regulatory requirements; (iv) annually evaluating its own performance; (v) obtaining and reviewing a report from the independent auditor at least annually describing the independent auditor's internal quality-control review or peer review; and (vi) establishing procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters." Dkt. #57 ¶ 171.

1 material information[, by] review[ing], fail[ing] to correct and issu[ing] CSK Auto's
2 improper earnings press releases between March 12, 2002 and March 27, 2006." Dkt. #57
3 ¶ 174.

4   This attempt to allege that the Audit Committee is liable because it actively
5 participated in the issuance of false financial statements is entirely conclusory. There is no
6 mention of how the Audit Committee learned of CSK's improper accounting, who presented
7 it with the information, when, or how the committee members' response or lack thereof
8 rendered them active participants in CSK's wrongdoing.

9   Plaintiff seeks to bolster her allegation that the Audit Committee knew of wrongdoing
10 by noting that CSK hired independent outside counsel and an accounting firm. *Id.* ¶¶ 10,
11 104. But such actions, in the absence of particularized facts of wrongdoing by the
12 Committee, are precisely what a responsible Audit Committee would be expected to do upon
13 discovering accounting irregularities and therefore undercut Plaintiff's demand futility
14 arguments. *See Kanter v. Barella*, 489 F.3d 170, 179 (3d Cir. 2007) (Defendant's retention
15 of Debevoise & Plimpton, LLP and PricewaterhouseCoopers, LLP to conduct an independent
16 investigation, and subsequent discipline of several employees and public notification of
17 inaccurate financial reports "suggest that the board reacted appropriately.").

18   Plaintiff also alleges that "significant deficiencies and material weaknesses [] were
19 known to exist since at least 2002[.]" Dkt. #57 ¶ 173. In a rare attempt to provide factual
20 support, Plaintiff points to CSK's 2002 and 2003 Form 10-Ks, which stated that no changes
21 were made to internal controls, and then to the 2004 10-K, which stated that the Company
22 "did not maintain effective internal control over financial reporting as of January 30, 2005."
23 *Id.* ¶ 173. Contrary to Plaintiff's belief, however, the admission in the 2004 10-K that CSK
24 did not maintain effective controls as of 2005 does not indicate that members of the Audit
25 Committee knew the controls were ineffective – as opposed to discovering their
26 ineffectiveness after problems arose – or actively aggravated deficiencies in internal controls
27 during the Relevant Period.

28

Finally, Plaintiff alleges that the Audit Committee members are not disinterested because they, along with the other Directors, approved and in some cases signed the financial statements that CSK released. *Id.* ¶¶ 174, 176. Plaintiff is correct that "[b]y restating the Company's financial results, the Defendants have admitted that the financial statements, when issued, were false and misleading." Dkt. #69 at 11. But Plaintiff has pled absolutely no particularized facts showing that the Audit Committee members knew the errant financial statements were false when issued, and no reasonable inference arises from Plaintiff's allegations. *See In re Computer Sciences Corp. Deriv. Litig.*, No. CV 06-05288 MRP, 2007 WL 1321715, at *9 (a plaintiff may not excuse demand "by merely making conclusory allegations that a director disseminated financial statements he knew to be false.") (citing *Guttman*, 823 A.2d at 503-07). Although Plaintiff cites cases in which courts have found that directors' approval of financial statements could subject them to liability, those cases are inapposite. *See Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966 at *6 (N.D.Cal. Jan. 14, 2005) (assuming without deciding that allegations involving audit committee members "may suffice," but still dismissing the complaint for failure to plead demand futility); *In re TASER*, 2006 WL 687033, at *11 (finding that plaintiff had pled particularized facts regarding directors' knowledge).

The Court finds that Plaintiff has not alleged particularized facts that show that the members of the Audit Committee knew of or participated in irregular accounting practices.

        **2.        Allegations that the Audit Committee Failed to Oversee CSK's Accounting Practices.**

Plaintiff's allegations that the Audit Committee members, or any other Director, breached a general duty of oversight are referred to in Delaware as a *Caremark* claim. *See In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996). Such a claim "requires a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith. Put otherwise, the decision premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs." *Guttman*, 823 A.2d at 506. The Delaware Supreme Court has recently remarked that director oversight liability only

- 8 -

1 arises when the directors "utterly fail to implement any reporting or information system of
2 controls; *or* . . . having implemented such a system or controls, consciously fail to monitor
3 or oversee its operations thus disabling themselves from being informed of risks or problems
4 requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

5 Plaintiff states that she is not pleading a *Caremark* claim against the Audit Committee,
6 but rather that the Committee was "aware of violations" and failed to act. Dkt. #69 at 5.
7 Several of Plaintiff's allegations, however, precisely allege a *Caremark* claim. Plaintiff
8 alleges that the Audit Committee members allegedly "breached their fiduciary duties of due
9 care, loyalty, and good faith because they failed to monitor or oversee the operation of
10 systems or controls in place at CSK[.]" Dkt. #57 ¶ 172. Further, the Audit Committee
11 allegedly "failed to ensure the Company maintain [sic] an effective control environment and
12 failed to even suggest that the Company take any corrective actions with regard to significant
13 deficiencies and material weaknesses[.]" *Id*. ¶ 173. Whether acknowledged by Plaintiff or
14 not, these are *Caremark*-type claims and the Court will address them as such. *See Ferre*,
15 2007 WL 1180650, at *9 (rejecting plaintiff's argument that it was not asserting a *Caremark*
16 claim when the complaint specifically alleged the directors' failure of oversight and did not
17 contain particularized allegations that directors were aware of problems).

18 **a.   Problems Within Internal Audit Department.**

19 Plaintiff alleges, through reports by a Confidential Witnesses who served as a staff
20 accountant at CSK, that CSK's Internal Audit Department did not perform much work until
21 October of 2004, that it focused on SOA compliance in a "minimal" and "hastily done"
22 manner, that the inventory and vendor problems were not uncovered until 2005, and that
23 CSK provided few instructions to and required little of Audit Department staff. Dkt. #69 at
24 6 (citing Dkt. #57 ¶ 49). Further, the Complaint alleges that the Audit Department knew of
25 problems with accounting for In-Transit Inventory and Vendor Rebates in 2005, but did not
26 conduct an audit, and that CSK filed inaccurate management and auditor opinions pursuant
27 to SOA in their 2004 Form 10-K. *Id*. at 7 (citing Dkt. #57 ¶ 49).

28

While it may be true that the Audit Committee was responsible for overseeing the Internal Audit Department, Plaintiff has failed to plead particular facts showing that the Audit Committee failed to do so. She alleges no facts that the Audit Committee was apprised of accounting problems within CSK or ways in which the Audit Committee's oversight was so deficient that the Committee's inaction was tantamount to not doing its job at all. Plaintiff alleges that Internal Audit Director Scott Neff engaged in regular discussions with the Audit Committee and sent it monthly reports (Dkt. #57 ¶¶ 49(a)(vi), 171), but does not allege the contents of these reports. *See Guttman,* 823 A.2d at 503 (Plaintiff must produce "well-pled, particularized allegations of fact detailing the precise . . . information that would have come to [the Board's] attention"). In the absence of some evidence of disclosures, the Committee "could not have been expected to discover the accounting irregularities, even when exercising a good faith effort, because discovery require[s] disclosure by management or uncovering by the auditors of conduct deep below the surface of the financial statements." *Id*. at 507. Plaintiff's allegation that Defendant Philippin "had a heightened duty to insure the accuracy and fairness of CSK Auto's financials" due to his financial background (Dkt. #57 ¶ 175) is similarly deficient because Plaintiff has pled no facts to suggest that Philippin was either not fulfilling his duties as a Director or was uniquely aware of accounting problems or the need for more oversight at CSK. In the absence of particularized facts connecting internal audit problems at CSK with the Audit Committee's lack of oversight, Plaintiff has presented no factual support for her oversight liability claim. Her conclusory allegations that the Committee was "fully apprised" of problems and "had a duty to oversee the integrity of the Company's internal audit function" (Dkt. #69 at 7) simply do not satisfy the particularity requirements of Delaware law. *Guttman*, 823 A.2d at 507.

### b. Favoritism Toward CFO Don Watson.

Plaintiff alleges that many of the accounting problems arose from senior officer Don Watson. But Watson was not a Director, and the only grounds for Plaintiff's assertion that the Audit Committee knew of his alleged improprieties are the fact that he reported to the Board and the Directors liked him. Dkt. #69 at 8 (citing Dkt. #57 ¶ 49). The Complaint

1  contains no allegations, however, concerning what Watson reported to the Board, and merely
2  alleging that the Board liked him does nothing to demonstrate that the Board knew of his
3  alleged accounting irregularities and consciously chose to take no action.

### c.     "Tone at the Top."

Plaintiff alleges that the Audit Committee failed to set the proper "tone at the top" because senior managers at the company discouraged employees from raising concerns relating to improper accounting. Dkt. #57 ¶¶ 11, 49. Employees were encouraged to "do what leadership says, regardless if it is right or wrong." *Id.* ¶ 49(f)(i). But these allegations contain no specific facts to suggest that the Audit Committee knew of these actions of unnamed senior managers, nor do they contain facts showing that the alleged "tone" was established by the Committee. It would be difficult to find a more general or conclusory pleading than director liability based on failing to set a proper "tone at the top."

### d.     Internal Controls.

Plaintiff continues her conclusory style by again alleging that the Audit Committee failed to implement an adequate system of controls. *Id.* #57 ¶¶ 172-73. In the case cited by Plaintiffs, the court stated that the "Audit Committee's role in reviewing matters that significantly impact on the Company's financial disclosures, suggest that the Committee was duty-bound to ensure that [the company] implemented an adequate system of internal controls[.]" *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F.Supp.2d 267, 277 (S.D.N.Y. 2006). In that case, however, the plaintiffs pled particularized facts showing that the Audit committee knew of the accounting irregularities.

Here, Plaintiff merely argues that because CSK's vendor allowance programs were of "critical importance" to CSK, "this aspect of the Company's operations without doubt would be an area of focus for the Audit Committee." Dkt. #69 at 9; *see Ferre*, 2007 WL 1180650, at *9 (stating that *Veeco* was inapposite because plaintiff in that case pled more than conclusory allegations). Courts have repeatedly held that a plaintiff must allege more than that Directors should have known or must have known about matters relating to the corporation's "'core' business." *Ferre*, 2007 WL 1180650, at *6 (citing *Rattner*, 2003 WL

- 11 -

22284323, at *13). In Plaintiff's Complaint, like in the dismissed complaint in *Rattner*, it is impossible "to determine what role, if any, the Board or its members played in the internal processes of collecting and disseminating financial information." 2003 WL 22284323, at *13.

### e. Financial Statements.

Finally, Plaintiff alleges that Audit Committee members face a substantial likelihood of liability for reviewing, but not correcting, CSK's press releases concerning earnings and SEC filings. Dkt. #57 ¶ 174. Again, however, the fact that the Audit Committee reviewed CSK's financial statements does not show that its members knew about prior errors in those statements or consciously disregarded the risk that CSK's accounting procedures may have created such errors. *See Computer Sciences*, 2007 WL 1321715, at *9 (citing *Guttman*, 823 A.2d at 503-07). Any argument that they did is especially weak where outside directors are involved. *See In re Forest Labs, Inc. Derivative Litig.*, 450 F.Supp.2d 379, 391 (S.D.N.Y. 2006) (rejecting plaintiff's attempt to impute knowledge of accounting errors "to Outside Directors who are not alleged to be directly involved in the day-to-day operations of the company").

### 3. Audit Committee Conclusion.

In summary, Plaintiff has utterly failed to plead particular facts showing that the three Audit Committee Directors face a substantial prospect of liability that renders them interested. Plaintiff has alleged no evidence of actual wrongdoing or knowledge of wrongdoing on the part of these Directors, and has fallen far short of alleging a *Caremark* bad faith failure to act.

### D. Jenkins' Position as Chief Executive Officer.

Plaintiff alleges that Jenkins, the only inside director on the Board, lacked the necessary independence to consider a demand because he was beholden to Directors Godlas, Marquis, Philippin, and Henderson, the members of the Compensation Committee that set his salary. Dkt. #57 ¶ 178. As mentioned above, a director lacks independence if he is beholden to an interested director or "so under [another's] influence that [his] discretion

would be sterilized." *Rales*, 634 A.2d at 936. Plaintiff has pled no facts suggesting that members of the Compensation Committee were in any way interested, so Jenkins cannot be said to be beholden to interested Directors. Plaintiff argues that three of these individuals are interested because they face liability as members of the Audit Committee, but the Court has already found Plaintiff's Audit Committee allegations to be insufficient.[5]

### E.  Insider Trading.

Plaintiff alleges that two of the Directors – Jenkins and Bazlen – traded shares of CSK stock during the Relevant Period. Dkt. #57 ¶ 176. Plaintiff then alleges that "[b]ecause these defendants received a personal financial benefit from the challenged insider trading transactions, these defendants are interested." *Id*. But Delaware law includes no provision that "makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information." *Guttman*, 823 A.2d at 502; *see also In re Sagent*, 278 F.Supp.2d at 1089 ("[B]are allegations of stock sales are insufficient, because the trading of stock is not in itself improper under Delaware law.") (citing *Field v. Allyn*, 457 A.2d 1089, 1099 (Del. Ch.), *aff'd*, 467 A.2d 1274 (Del. 1983)). Rather, Plaintiff must allege "particularized facts regarding the directors that create a sufficient likelihood of personal liability because they have engaged in material trading activity at a time when (one can infer from particularized pled facts that) they knew material, non-public information about the company's financial condition." *Guttman*, 823 A.2d at 502.

Plaintiff has not done so here. The Complaint alleges simply that Jenkins and Bazlen had access to material non-public information because of their "access to and review of

---

[5]Even if members of the Compensation Committee were interested, the fact that they controlled Jenkins' salary would not, without more, call into question Jenkins' independence. Demand futility "cannot be pled merely on the basis of allegations that directors acted or would act to preserve their positions." *In re Sagent*, 278 F.Supp.2d at 1089 (citing *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds*, 746 A.2d 244 (Del. 2000)). "If these allegations were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand." *Id*.

- 13 -

1 internal corporate documents; conversations and connections with other corporate officers, 2 employees and directors and attendance at management and Board meetings" Dkt. #57 ¶ 176. 3 Plaintiff does not provide any particularized information about the internal corporate 4 documents that Jenkins and Bazlen allegedly reviewed, details of the conversations they had 5 with other corporate officers, or what information was discussed at the Board meetings they 6 attended. Nor has Plaintiff alleged any unusual trading patterns or particularly suspicious 7 timing of the sales. *See Rattner*, 2003 WL 22284323, at *10 (rejecting demand futility 8 allegations of insider trading when the complaint was "devoid of any particularized facts that 9 could lead to the inference that the timing of the trades reflected . . . impermissible insider 10 trading"); *see also Guttman*, 823 A.2d at 504 (finding allegations of insider trading 11 insufficient when plaintiff did not allege that the trading was inconsistent with prior trading 12 practices or address whether the directors traded because options were expiring). In fact, 13 Defendants point out that Jenkins' sales occurred just before options were about to expire – 14 a rational time for sales to occur independent of any insider information. Dkt. #62 at 11.[6]

15 Plaintiff has not alleged sufficient facts to suggest that Jenkins' and Bazlen's stock 16 sales render them interested.

17 **F.     Personal and Business Relationships.**

18 Plaintiff alleges that various business and personal relationships rendered certain 19 Directors interested. Dkt. #57 ¶ 179. She alleges that Director Marquis is a long time 20 business associate of Directors Philippin and Shutzer. *Id*. Plaintiff alleges that because of 21 these relationships, none of these three Directors "will take the action requested by plaintiff 22 herein against one another or the remainder of the Individual Defendants." *Id*. These

---

[6] Defendant requests the Court take judicial notice of the proxy statements filed with the SEC that detail Jenkins' and Bazlen's stock sales. Dkt. #63. Although in ruling on a motion to dismiss a court must typically limit its review to the contents of the complaint, a court may take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Judicial notice is "appropriate for SEC filings, press releases, and accounting rules[.]" *See In re TASER*, 2006 WL 687033, at *7.

1 conclusory allegations of outside business relationships, with no evidence of bias, are not
2 sufficient. Courts have held that "to render a director unable to consider a demand, a
3 relationship must be of a bias producing nature. Allegations of mere personal friendship or
4 a mere outside business relationship, standing alone, are insufficient to raise a reasonable
5 doubt about a director's independence." *Beam ex. rel. Martha Stewart Living Omnimedia,*
6 *Inc. v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004).

7 Defendant Shutzer, Plaintiff alleges, is interested because he acted as a senior
8 managing director of Evercore Partners, an investment firm that provided CSK advice in
9 acquiring another company in 2005, and as a consultant to Lehman Brothers from 2000-
10 2003, at a time when Lehman Brothers held the right to provide investment banking services
11 to CSK. Dkt. #57 ¶ 180. Plaintiff alleges that Defendant Shutzer would not have taken the
12 action requested by Plaintiff for fear of losing similar potential business opportunities. *Id.*
13 But Plaintiff does not allege that Shutzer is still involved with either Evercore or Lehman
14 Brothers, explicitly stating that his involvement with the latter ended in 2003. Further,
15 Plaintiff has not alleged the extent of fees collected by Evercore or how Evercore's
16 relationship with CSK affects Shutzer's compensation. *See Guttman*, 823 A.2d at 502-03
17 (finding insufficient the allegation that director, also an attorney at corporation's outside
18 counsel, was interested because the complaint failed to allege the amount of fees the law firm
19 received from the corporation or how the director's law firm compensation depended on
20 work he did for the corporation).

21 Finally, Plaintiff alleges that Defendant Bazlen lacks independence because he served
22 as President and COO of CSK from 1994 to 2000 and now receives $50,000 per year from
23 CSK. *Id.* at ¶ 181. Courts have held, however, that compensation amounts far greater than
24 $50,000 did not destroy independence. *See Jacobs v. Yang*, No. Civ.A. 206-N, 2004 WL
25 1728521, at *4 (Del. Ch. Aug. 2, 2004) (director independent even though he could "lose at
26 least $17,342,500"); *In re Sagent*, 278 F.Supp.2d at 1089 (compensation of $566,982 did not
27 render director interested); *In re Merrill Lynch Litig.*, 218 F.R.D. 377, 380-81 (E.D.N.Y.
28

2003) (independence not compromised by compensation from $160,000 - $260,000) (applying Maryland law).

### G.     Likelihood of Liability.

The risk of personal liability for a director can support a finding that the director is interested when the risk is not just "a mere threat" but "a substantial likelihood." *Aronson*, 473 A.2d at 815. To the extent that the Complaint purports to show demand futility by alleging that the Audit Committee members or other directors face a likelihood of personal liability and thus could not fairly consider a demand, such allegations are insufficiently pled.

CSK's Certificate of Incorporation and Bylaws state that the Directors are entitled to indemnification for liability arising from any actions that were taken in good faith and in a manner reasonably believed to be in the best interests of CSK. Dkt. #63, Ex. B Art. 8 §§ 1, Ex. C Art. 5 §§ 1-2; *see also* Del. Code Ann. tit. 8, § 145(a) (2006). There is a presumption that conditions for indemnification have been satisfied. Dkt. #63, Ex. B. Art. 8 § 3.

Defendants have requested that the Court take judicial notice of CSK's Certificate of Incorporation (Dkt. #63), and the Court will do so as explained in Footnote 6 *supra*. "When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside that exemption." *In re Baxter Int'l, Inc.*, 654 A.2d 1268, 1270 (Del. Ch. 1995). Plaintiff has failed to plead particularized facts showing that any Director did not act in good faith and in a manner reasonably believed to be in the best interests of CSK, and therefore cannot overcome the presumption of indemnification of the Directors. Additionally, none of the outside Directors has been named as a defendant in the pending federal securities class action suit. This fact is relevant when determining whether Directors face a threat of personal liability. *See Guttman*, 823 A.2d at 504.[7]

---

[7]Plaintiff alleges that Jenkins is not disinterested because "if he were to bring this action, it would harm his defenses in the federal securities fraud class action." Dkt. #57 ¶

- 16 -

1   Finally, Plaintiff alleges that a so-called "insured versus insured exclusion" in the
2   insurance policy for CSK's Directors further underscores the Directors' inability fairly to
3   consider a demand. Dkt. #57 ¶ 189. Courts have routinely rejected this argument. *See, e.g.*,
4   *Ferre*, 2007 WL 1180650 at *8; *Caruana v. Saligman*, Civ. A. No. 11135, 1990 WL 212304,
5   at *4 (Del. Ch. Dec. 21, 1990).

### H.   Cumulative Evidence.

Having found each of Plaintiff's allegations insufficient when considered in isolation, the Court must decide whether the totality of Plaintiff's allegations demonstrate reasonable doubt about the Board's impartiality. *Harris v. Carter*, 582 A.2d 222, 229 (Del. Ch. 1990). If the Complaint were required to conform only to the permissive pleading standards of Rule 8, it would adequately state a derivative claim. But derivative pleadings "must comply with stringent requirements of factual particularity that differ substantially" from notice pleading. *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). The Court concludes that Plaintiff's allegations, even considered cumulatively, fail to satisfy this particularity requirement. Plaintiff has failed to allege facts that sufficiently support her allegation that the Board could not fairly have considered a demand. The Court must therefore dismiss the Complaint for failure to plead demand futility.

---

178. Plaintiff cites no authority and fails to explain how simply being named in another suit would destroy Jenkins' impartiality, especially when the Court has once dismissed the complaint in that suit for failure to comply with Rule 9(b). *See Communications Workers of America*, 2007 WL 951968, at *9. Courts have rejected the very allegation Plaintiff makes. *See, e.g., Ji v. Van Heyningen*, No. CA 05-273 ML, 2006 WL 2521440, at *10 (D.R.I. 2006) (applying Delaware law). But even assuming Jenkins' potential liability in that case renders him interested, Plaintiff has pled no particularized facts alleging that the six outside Directors are so beholden to Jenkins that their independence would be compromised. *Rales*, 634 A.2d at 936.

- 17 -

1    **IT IS ORDERED** that Defendant's Motion to Dismiss (Dkt. #62) is **granted**.

2    DATED this 24th day of August, 2007.

*[signature]*

David G. Campbell
United States District Judge